## KELLEY et al. v. HEYMAN PROCESS CORPORATION.

District Court, S. D. New York.

May 18, 1933.

Usina & Rauber, of New York City (George I. Haight, of Chicago, Ill., of counsel), for plaintiffs.

Charles H. Wilson, of New York City, for defendant.

COLEMAN, District Judge.

[1, 2] The two patents in suit cover a step in the manufacture of chocolate milk beverages the purpose of which is to prevent the precipitation of the chocolate fibers to the bottom and the rising of the fatty constituents to the top of the liquid. An application for a patent with generic and specific claims was filed by North on August 15, 1925, but subsequently by direction of the patent office a division was made and the two patents were issued on April 23, 1929, with the same specification, No. 1,710,507 containing the generic claims and No. 1,710,504 containing specific claims.

Chocolate milk beverages contain finely ground cocoa beans, milk, sugar, and sometimes a flavoring such as vanilla. The chocolate fibers being heavier than the milk tend to fall to the bottom and the cream and other fatty constituents tend to accumulate at the top; when the beverage is sold in bottles for consumption without further processing by the purchaser, this separation of constituents is a disadvantage and the specification of the two patents discloses a method of decreasing it by increasing the viscosity of the beverage.

This is accomplished in part by heat and in part by the addition of a thickener such as starch or agar.

Long before 1925 the world recognized that an increase in the viscosity of a fluid would diminish the precipitating tendency of heavier substances mixed with it and also the rising tendency of lighter substances. This is particularly true where the viscosity is produced by a colloid such as starch, agar, or casein, which does not form a true solution in the fluid. It was well recognized that milk contained a substantial amount of the colloids casein and albumen and that a heating of them would increase their volume and thus increase the colloidal viscosity of the milk. It was also well recognized that the addition of starch or agar would have the same effect. Before 1925 chocolate milk mixtures had been marketed which had been sterilized in their containers without evaporation, and must thereby have undergone an increase in viscosity due to the swelling of the casein and albumen in the milk. Furthermore, some of these mixtures had added to them a certain amount of starch in addition to the starch which was liberated from the cocoa fibers in the process of sterilization, and this increased their colloidal viscosity.

It thus appears that prior to North's application the trade had for many years been doing with chocolate milk mixtures the two things which North discloses as his means of preventing separation, namely, subjecting the milk to a high degree of heat without evaporation and adding a colloid thickener. Though these were not always done in conjunction, they sometimes were. The plaintiff contends, however, that they were never done for the purpose of preventing the separation of the chocolate fibers and the fat globules from the body of the liquid; that the heat was applied merely for sterilization purposes and the colloid added merely for the purpose of giving greater creaminess or consistency to the drink. It is clear, however, that the world recognized that these measures would decrease the separating tendency even though that may not have been deemed a particularly important objective. Seemingly it was not until the bottled beverage was quite extensively used and the cocoa beans were commercially ground fine enough to make the suspension of the fibers practically permanent, that the trade paid any attention to the means of avoiding their precipitation. Furthermore, the art had employed these two measures for the specific purpose of preventing precipitation and separation (see Exhibits G, L, F, E,

West pat. No. 1,495,623, Achor pat. No. 983,-014).

The principal question is whether North accomplished an invention in his disclosed method of applying these two well-known measures. In his specification he says: "The motion of fat particles upward and of the cocoa particles downward in a mixture of milk and cocoa is fast or slow, and such motions cannot, so far as I am aware, be brought absolutely to a standstill without an increase in viscosity so great that the liquid in which these particles is suspended is absolutely rigid, as it would be if frozen. On the other hand, however, the friction can be increased sufficiently to make the movement of the particles so slow that no separations serious enough to impair the commercial value of such mixtures will take place for days or even weeks."

He then states that his proposed two ways of increasing the viscosity of the mixture and therefore the suspension of the particles, is by adding a thickener such as cornstarch, gelatin, agar, etc., and by heating the milk to a temperature of about 240 F. He specifies that the percentage of thickener in the entire liquid may be about ½ per cent. and that it is added to the mixture only for the purpose of taking care of any irregularities in the heating of the milk. In other words, he recognizes that if a maximum viscosity is obtained from the casein by means of heating, the addition of a thickener is unnecessary. The longer the heat is applied and the higher the temperature the greater in general will be the viscosity of the casein up to a point where it completely coagulates and becomes a firm curd. This curdling point varies depending upon the degree of acidity in the milk so that it is difficult to determine how to get the maximum of viscosity from the casein without running great risk of curdling. The addition of the thickener makes it unnecessary to get the point of maximum viscosity in the casein; that is, by adding its own viscosity it brings the total viscosity of the fluid to a sufficiently high point to keep the cocoa fibers in satisfactory suspension for commercial purposes without getting the last bit of viscosity from the casein.

The specification points out that the ordinary sterilizing processes is a sufficient application of heat to effect the desired increase in the viscosity of the casein and it suggests that a temperature of 240 F. be maintained for about thirty minutes. This temperature and period of application were customarily used in the sterilization of such products and under ideal conditions would have produced sufficient viscosity from the casein to have satisfied the commercial requirements of suspension of the cocoa fibers. If the sterilization was not at quite so high a temperature or for so long a period or if the acidity of the milk was greater than usual, the viscosity added by the thickener would compensate for the deficiency of the viscosity derived from the heating.

The claims relied upon in patent No. 1,-710,507 are:

"1. That step in the process of producing cocoa-milk mixtures which consists in the addition of a thickener and the application of heat the mixture to increase the viscosity of the fluid to such an extent that by its friction on their surfaces the cocoa fibers remain in suspension.

"3. That step in the process of producing cocoa-milk mixtures which consists in the addition of a thickener to a mixture to increase the viscosity of the fluid to such an extent that by its friction on their surfaces the cocoa fibers remain in suspension, and heating the mixture to a temperature of about 240° F. at a pressure of about 15 lbs. to the square inch for a period of about thirty minutes to aid in maintaining the milk fat and the cocoa particles in suspension and preserve the mixture from decomposition."

These are exactly the same as the claims relied on in patent No. 1,710,504 except that the latter call for the specific thickener agar instead of a generic class of thickeners.

The defendant is charged as a contributory infringer. It merely sells a mixture of dry cocoa, sugar, and milk-powder with a small percentage of agar added. This mixture is sold to bottlers who add water and sterilize it. The sterilization is essential and may be deemed to have been contemplated by the defendant in the sale of its product. The heat has the effect of swelling the casein in the milk and of causing the agar to be thoroughly dissolved in the liquid, and these two facts result in an increase of the viscosity of the fluid sufficient to hold the cocoa fibers in a suspension adequate for commercial purposes. The viscosity is also increased by the heat liberating a certain amount of starch from the cocoa fibers. The rising of fat to the surface plays no important part in the bottled product because it has been largely eliminated from the defendant's powder by the use of defatted cocoa and dehydrated skim milk.

It is my opinion that the patents in suit do not cover an invention and are, therefore, invalid. They merely call for an ap-

plication of previously well-recognized principles which I believe any man skilled in the art would have thought of if he were working upon the problem of keeping the cocoa fibers in suspension. North has merely expressed the effect of processes previously practiced, which effect had been recognized even though it may not have been thought important. He did not devise a new method of applying these old principles. His patents call for a heating of the milk in the ordinary process of sterilization; and the method and extent of the addition of the thickener are left largely to the manufacturer's own discretion. Indeed the specification contains inaccuracies which might have been misleading; for instance, if there were added to a fluid mixture 2 per cent. of agar as specified the substance would become a thick jelly, and the requirement that there be 15 pounds of pressure in the sterilizer at a temperature of 240 F. is impracticable. These defects do not render the patents invalid as contended by the defendant, but they indicate the lack of technical enlightenment to be found in the specification. The patents disclose a process commercially useful, but not involving invention over the prior art.

The history of the problem and its solution does not impel me to reject my a priori opinion. The plaintiff asserts that the previous use of homogenization, which was the forcing of the fluid under high pressure through very small apertures, was an unsuccessful attempt to solve the problem of preventing separation in the bottles. This, however, was not the fact, because it had been recognized that homogenization was of no assistance in holding the cocoa fibers in suspension. Its principal purpose was to break up the fat into very minute globules so as to give the drink a creamy consistency, and in part to prevent it from accumulating at the top.

As early as 1914, eleven years before North's application, he supervised the operation of a plant which produced many thousands of bottles of chocolate milk beverage of which about one-fourth did not readily precipitate its cocoa fibers because of the heat in sterilization. Apparently, however, the manufacturer did not deem that a circumstance of particular value, and the trade during the ensuing eleven years made no effort to obtain that result uniformly. It may be that the indifference was due to the fact that the coarser-ground cocoa then in use could not be kept permanently in suspension without excessive viscosity, or it may have been due to fact that the bottled beverage was not widely used. Certainly during that period the suspension was obtained in canned chocolate milk mixtures by the method claimed by North, though the fact may have been deemed immaterial.

The plaintiff has had great commercial success with its product made in accordance with the patents in suit, but it would be unsafe to infer that it was due to the suspension of the cocoa fibers or that it was the result of North's formulation of what had been previously known. Nor is the plaintiff's contention correct that defendant's advertisements of its product as "just born" was an admission of the inventional novelty of its nonsettling characteristic. The defendant was advertising a commercially new chocolate milk mixture in powdered rather than syrup form.

Decree for defendant.